Counsel, you may proceed. May it please the court, Samantha Heifetz. Could I ask the clerk to go back to 15? Thank you. Go ahead, counsel. You may proceed. Samantha Heifetz for the United States, the Department of Justice and Attorney General Lynch. We are here on appeal from a district court decision improperly enjoining regulations implementing a certification process under Chapter 154 of Title 28. Now, Chapter 154 establishes a statutory scheme that allows states that satisfy various criteria to qualify for special federal habeas rules in their capital cases. At the outset, this case presents key threshold issues that want to be sure to start there. Now, the plaintiffs are two public law offices that represent state capital prisoners in habeas proceedings. The crux of their claim of injury is that they face uncertainty about the legal landscape going forward, about whether Chapter 154 special rules may apply to particular clients in the future. There are several difficulties with this. Legal uncertainty for an attorney is not a cognizable injury for purposes of Article III standing. Suppose they brought this case in the names of various state capital inmates. Would that be different? I don't think that the result would be different. It certainly would be a different case than the one we have here. That was not how this case proceeded. Would that answer the standing issue? No, I think we would still have certainly a ripeness problem would remain, absolutely. But I think that the standing problem would still be one that the court would have to confront, because for any given capital defendant, there would be a question, of course, of whether, depending on where that person is, has been convicted, if they've already been convicted, or perhaps if they haven't been convicted, whether there's state certification. But presumably there's at least one potential claimant who would have standing? There is certainly no doubt that there will be individuals with standing. The government's position in this case, to be very clear, is not that these challenges cannot be brought. It is that they can't be brought by the attorneys for these individuals, and that they can't be brought at this time, in this way, that this case is not ripe. So we think that a proper challenge would, for example, be those capital inmates, or others, there would be also others with standing, potentially, challenging a certification decision. So that is the route that we see all of the challenges that are being brought forward at issue in our appeal today, properly being before a court, would be in the D.C. Circuit as a challenge to a certification decision. Is your view that the D.C. Circuit is exclusive in these cases? Well, what the Congress said in writing Chapter 154 is that the D.C. Circuit is the exclusive forum for challenging certification decisions. Do you have a different view? No, absolutely not. No, no. I just mean to say it's not merely my view, but it was Congress's view. And so these challenges can all be brought. But you're relying on some passage in the statute, then? Yes, absolutely. Yeah, Chapter 154 directs that de novo review will be provided in the D.C. Circuit. But it doesn't use the word exclusively. That's why I asked you the question. No, it is certainly our view that it is exclusive, because the legislative history confirms that. What Congress was doing in 2006, so let me just step back and provide a little bit of context. Chapter 154 was created in 1996 as part of AEDPA. Initially, as past then, it put all of the decision-making about the application of Chapter 154 in the hands of federal courts. Regional federal habeas courts would decide whether states had established the relevant mechanism and whether it should be applied in a given, whether the timelines and provisions of Section 154 should apply in a given case. In 2006, Congress revisited this and changed it and took the first part of the decision making and put it in the hands of the Attorney General. Congress asked the Attorney General, directed the Attorney General, to make these certification decisions about whether states had established the necessary mechanism. And it left the second part of the decision-making about whether a particular habeas petitioner had been availed or given the opportunity to benefit from that mechanism. It left that part in the hands of federal habeas courts, but it moved the first part to the Attorney General. And then, it also made clear that it wanted that decision-making by the Attorney General to be reviewed by the DC Circuit, because the DC Circuit is not a circuit that hears state federal habeas petitions. And so it thought that the DC Circuit would be an especially neutral arbiter of these reviews. Well, that's with respect to claims after certification, right? Precisely, right. So the DC Circuit... But if one wanted to challenge the proceedings generally, is it still your view that even those challenges are... It's only challenges to the certification decisions that go to the DC Circuit. In a given petitioner's case, they would still proceed in their regional federal habeas court. But these challenges are best understood as challenges to future certification decisions. And that's the reason why we think that these challenges are not only unripe, but that Congress would have understood that these would be unripe until there's a certification decision. And that, therefore, they are also to flow to the DC Circuit and to be presented as part of that challenge. That is to say, a certification decision. And I'm happy to walk through why, with regard to each of the substantive challenges that we're talking about today, we face a ripeness concern. But I certainly don't want to suggest that there isn't a grave standing issue that this case presents. That's certainly also the case. This is really a litigation where we face multiple threshold concerns that we face. Is there a moment of standing which is lacking, in your view? We don't have a concrete, particularized, imminent injury. We only have speculation about uncertainty. And frankly, it's really two parts. It's that legal uncertainty itself for lawyers. I mean, that's actually the nature of what it is to be a lawyer, as opposed to a cognizable Article 3 injury. If, you know, nor is uncertainty the grounds for a hardship that would justify allowing a challenge that's unripe to proceed. And we, the Supreme Court has told us that in cases like National Park Hospitality, they acknowledge that if uncertainty were enough, the courts would be inundated with requests for clarification. As I understand the fast-track system, if the certification is made as to a state, that immediately collapses the period in which the prisoner can seek federal relief from one year to six months. And that affects the research and investigation of the prisoner as to the grounds for federal habeas. Why isn't that a sufficiently concrete injury? So there's a few points that I would make in response to that. That is why it's so important that a certification decision is made. But as the Supreme Court has told us in cases like Clapper, even where there is perfectly reasonable concern or uncertainty about what the future may hold, and taking steps today in the present, no matter how reasonable that is, it can't convert a speculative injury into a concrete one. And so what Your Honor is describing, we don't dispute that it may be reasonable to take steps in anticipation of what the future may hold legally. But our point is simply that that doesn't change the highly speculative nature of those concerns. And so we can't manufacture, as Clapper tells us, a present and concrete injury, an imminent injury. Well I think the attorneys are saying, how can we allocate our resources among different states? Some may be certified, some may not be certified. And that uncertainty, with limited resources for investigation and research, directly affects the quality of the work we do for our clients. Right, but that process, that's exactly what Clapper tells us, doesn't create a concrete, cognizable legal injury that meets the requirements for standing. To step back, I would also note that that kind of uncertainty isn't traceable nor redressable through the final rule that's at issue in this litigation. The uncertainty that they're concerned with stems from the very existence of Chapter 154. Well, but the relief they seek is to have no certifications made at all. So they're not faithful. That's right, Your Honor. They essentially seek to nullify the scheme that Congress has created because there would be no perfect rule that the Attorney General could write that would satisfy their claim of injury. There's no rule that could be devised that would possibly address the legal uncertainty that they assert because that legal uncertainty comes from not knowing whether a given state would seek certification and what kind of a system that state might have in place and how it would be addressed, both in the certification proceeding and by the C.C. Circuit, but also whether a given federal habeas court would determine that a particular petitioner had gotten the benefit of that scheme. I gather here we have California, which has not applied for certification, and Arizona, which has. That's correct. What's the status of the regulations at this point? Is it, your view, are they final yet or not? Well, the rule is final, but it's because it was enjoined, no action has been taken under the rule. So we have not moved forward in any way with the Arizona, with Arizona's request. You only have a few, three minutes left. Maybe you want to go to the substantive issues. Well, I'd be most interested, obviously, to address those that are of greatest interest to the panel. I think that, you know, for each of these, it becomes clear that, you know, if I had to at bottom what the plaintiffs are looking for, it seems that time and time again, they are anticipating, speculating about what the world might look like down the road. I'll tell you one that I'm concerned with, and maybe you can address this. One of the catch-all provisions deals with certification of state capital counsel mechanism where certain benchmark provisions are met. And then there's a sort of a catch-all phrase after that saying, or there are mechanisms which the Attorney General considers appropriate for capital litigation. And I, I have a great deal of difficulty understanding what the So the rule, it discusses this at some length and explains that the very specific standards that are set out in Section 26.22 in the first part, which are, are quite specific before we get to the provision Your Honor is describing, and those, those first two are based on existing Federal law. Those are benchmarks, and in fact, they are described in the provision Your Honor is describing. They are described as benchmark criteria that inform how that last provision will be understood. The rule states that they will serve as a point of reference in judging the adequacy of other counsel qualification standards that states may establish, and then a mechanism that doesn't incorporate the benchmark standards will receive, obviously, close examination by the Attorney General with particular attention paid to standards of experience, knowledge, skills, training, education, or combinations of these. There are a number of reasons that this was provision was included. We know that Congress, in enacting Chapter 154, was very keen to give states wide latitude in how they would go about establishing these criteria. And there was no desire on the part of the Attorney General in promulgating this rule to curtail that ability of states to take different approaches. Now, there's nothing in administrative law that would require the Attorney General to have done so. This is a perfectly permissible approach that explains how the Attorney General in the future will evaluate this, but those decisions will have to be fully explained in certification decisions. So this takes us back to the ripeness point, that once we have a certification My point is, my question, perhaps you don't phrase it correctly, if the standard for the Attorney General under the catch-all provision is what he considers or what she considers to be appropriate, how do we distinguish that from being arbitrary and capricious? Well, I think by definition something arbitrary and capricious is not appropriate. How can you tell what's appropriate? Right, but these are appropriate for the purpose for which they are described, right, appropriate for capital defense. And so we know from the first two sections, for example, some detail about what the Attorney General thinks is appropriate. And the rule explains that standards that don't meet the first two sets of criteria would presumptively be adequate. The experience in post-conviction litigation, for example, is presumptively adequate. The requirements meeting the Innocence Protection Act's requirements is another very specific set of standards that's laid out in section 26.22. So the rule actually does, at some length, provide detail about what would be appropriate. We know that things that fall under that line, we would anticipate would not be presumptively adequate. And so that third provision that opens the door to assessing state-specific circumstances and state-specific criteria, you know, the discretion that states have to develop their own criteria, is going to be viewed through the same lens as these other criteria. And so we do have a sense of what appropriateness looks like, but the reality is, again, this is not something to be decided in a vacuum. The Attorney General took a very considered and careful approach here in saying, look, I'm going to lay out a variety of criteria that I think are important and relevant. When a certification decision is issued in the future, it will have to be justified and it will be subject to de novo review in the D.C. Circuit. At that time, there will be an opportunity for people like, you know, the individuals, for example, that plaintiffs represent, to challenge that something was deemed appropriate when it should not have been. And it will be incumbent upon the Attorney General, in his or her decision, to have adequately explained why that decision was appropriate. And this is a really crucial aspect of administrative law, that courts don't preemptively come in and suggest that, you know, a agency needed to go further in its initial rulemaking with greater specificity when there's no justification either in the underlying statute or in the APA for that. Thank you, counsel. Our questions took you over time. Your time has expired. Thank you. We'll hear from the other side. Mark Shapiro for Appellee's Habeas Corpus Resource Center and Arizona Federal Defenders. As the panel has noted, Arizona has already applied for certification under Chapter 154. And what we seek at bottom through this litigation is the final rule prevents us from doing so on numerous counts that the District Court found warranted in joining the final rule. Namely, first, that the rule itself requires nothing more than a request in writing. Second, that there's no opportunity . . . What's wrong with that? Well, Your Honor, in order for us to meaningfully participate in the certification process, we have to know what it is that the State is asking. What it is saying is the mechanism that warrants application of Chapter 154. When you say we, who are you referring to? Our clients have to understand . . . Who are your clients? Our clients are two entities, government entities, one in the State of California, the other Arizona Federal Defenders. Various lawyers in different law offices. Excuse me? They're lawyers in law offices, I take it. They are not just . . . they are public . . . part of public entities, State and government Federal . . . They're not inmates. Excuse me? They're not inmates. They're not . . . No, they are not inmates, Your Honor, but that's . . . Go ahead. They're not . . . I don't think that poses a problem here. Well, it does for me. I mean, you know, if when we leave court today, Judge O'Scanlan backs into my car, I've got standing to sue him, but I don't see where my lawyer would have standing to sue him, or the American Bar Association would have standing to sue him. Well, we don't dispute that the entities have to show a concrete injury, but as the district court found, and she made findings of fact on this point, and I would refer the court to the government's excerpts of record at pages 45 to 47, where the court referenced the Bache and the Lawrence declarations in which she identified numerous immediate decisions that these entities will have to make regarding litigation, resources . . . Why aren't you really asking for an advisory opinion? No, Your Honor. We . . . because of the nature of the problems with the final rule, the effect of an application, Arizona's application in and of itself, results in a de facto 180-day deadline for our clients. We have no ability to ascertain whether or not the State of California, the State of Arizona, will be certified, but we have an obligation, statutory and ethical duty, to dozens, hundreds of clients that are at jeopardy of having their rights denied by defaulting claims, and so we have to proceed as if the rule is, in fact, in effect, and that's the result, and that's part of the problem with the final rule, that when the state submits a request in writing that need only say, we request that we be certified, and then we have no opportunity to meaningfully engage in a notice and comment period back and forth with the Attorney General's office that offers any insight as to what the Attorney General's thought process is, how he, she will go about making that determination. Why can't you go to the D.C. Circuit when a certification order is made that you don't agree with? Well, we don't dispute that we can eventually do that. Why doesn't that take care of it? Well, the problem with that is that there are factual determinations that are going to be made, and the record will be set based in part on, for instance, ex parte communications that are apparently occurring during the course of this process, and the government's position is, well, you don't have to be privy to those communications. We need to be able to show, for instance, that the state of Arizona, the state of California are not complying with whatever mechanisms they might suggest, in fact, comply with Chapter 154. But if you had a client who was threatened by this certification, and he sought a lawsuit in the district court, you could take discovery and find out what the AG was doing, right? In that particular case. Right. And then, you would have a record, which the district court could determine whether the certification was proper, and then you would have a de novo review, not a normal appellate review, but a de novo review in the circuit court in D.C. What's wrong with that? Well, I think part of the problem here is that the Chapter 154 was designed to create a streamlined process. And so, if, for instance, there is systematic, a systematic breakdown that occurs in the state of California and Arizona, as this court explained in Ashmis, it makes zero sense to go ahead in some sort of piecemeal litigation fashion, where in each and every case, we're going to have a district court say that, oh, well, California still, for example, is providing for counsel one and a half years after a direct appeal has concluded. If there's a systematic breakdown, it just makes little sense to go in time after time, client after client, and say, look, everything that has happened in all these . . . But if the systematic breakdown affects your client, and you establish that that deprives him of his rights, and that is affirmed by the district court of Columbia Court of Appeal, then that is precedent as to all the rest of the cases. Well, certainly, we don't dispute that if the court's position is that that is this sort of piecemeal litigation is the way to go, that we would have the opportunity to rely upon other cases as precedent. But what Congress intended in Chapter 154 was to say, look, this is a big stick that is going to . . . that is being dangled here. One, if, in fact, states are going to go ahead and be granted what is an extremely expedited federal habeas process, we want to ensure that competent counsel is, in fact, being appointed. What we have here is a system that allows a state to apply without any real showing that, in fact, there is a mechanism in place that provides for competent post-conviction counsel. And I think this gets to your point, Judge Bea, about the catch-all provision, which is exceedingly vague. It allows states to be certified under Chapter 154. As long as there is a reasonable assurance that they provide for competent or proficient state post-conviction counsel, we are at a loss as to what it is that that actually means. And, Your Honor . . . Couldn't Congress have just shortcutted this whole process under 154 by saying, the Attorney General shall certify state procedures as he sees best, period? I don't think that would do it. It would depend on what the Attorney General . . . how the Attorney General construed that delegation of authority. Here, the Attorney General construed that delegation of authority as requiring that he, at the time, set out these procedures. What we have here now is a provision that, despite the government's representations, in and of itself, can constitute a freestanding ground for certification. And so, that provision requires definitional content. We cite to Pearson, where the D.C. Circuit explained that it is not enough to simply throw out an exceedingly vague standard. There, it was a significant scientific agreement. And the purpose of the APA is to put parties on notice so that they can engage in the decision-making process and explain and anticipate what it is that the agency is going to do. Now, didn't the DOJ conduct hearings along the line, along the way here, or not? I'm not sure that there was actually hearings. There was a notice and comment period that occurred, where . . . Well, during the rulemaking process, there were opportunities for you, for your client, to participate, were there not? Yes. And we have challenges on that front as well, Your Honor. Are you barred from participating in the . . . in other words, not you specifically, but is the Arizona Federal Defender barred from participating in the certification procedure? Well, that's a good question, and one that has not arisen yet, because we aren't quite at that point. Well, there is a pending motion, or there's a pending application for certification, which we heard from the DOJ, is sort of in suspense because of this case. But once this case is resolved, one way or another, that certification proceeding will continue. Are you barred from participating in that? I don't believe . . . So you meaning the Arizona Defender, because obviously, there's a connection there. I think at that point, we would not be barred necessarily. But what I do know is that prior to the final rule taking effect, one of the problems with us filing sort of preemptive actions to protect our client's rights is that the Arizona Federal Defenders were precluded from taking on those cases in federal court to file those petitions early to ensure that the threat of this vague final rule would not actually be injurious to our clients. And that continues to be a problem today. Judge O'Scanlan, you mentioned the opportunity for notice and comment. One of the problems with this rule, and we didn't find out until the final rule issued, is that apparently the Attorney General is going to treat certifications as orders rather than rules. That comes with a whole host of problems in that it deprives us, our clients, of considerable opportunity to engage in the decision-making process. You can appeal the orders though, can't you? Excuse me? You have relief from orders that you think should not have been issued. It's not like you're left without a remedy. But we have a right to engage in a back and forth under the APA during the certification period itself. Well, I mean, you said there was notice and comment. And if these certifications are treated as orders and they issue an order you don't like, you have remedies. We have after-the-fact remedies. So, for example, we have to, but that means that for now, what we have to do is we still have to go in not knowing what the process is going to look like. We have to file early. We have to get our clients in to protect their 180-day deadline and make sure that they do not default. And what's wrong with that exactly? What's wrong with that? Yeah. Well, what's wrong with it is that the APA requires that there be definitional content, is we should be able to engage and make informed decisions as to how and why the Attorney General is going to make these decisions. Again, in Pearson, the court, citing Justice Stewart's decision, famous decision regarding obscenity, said, look, it shouldn't have to be, I know it when I see it. Instead, parties should be made aware. We shouldn't have to fly blind here, allocate resources, fundamentally adjust the way each entity is deciding which cases to take on, which clients they cannot take on, potentially defaulting claims because they are in a rush to file for certain clients, have to make budgetary considerations for the upcoming year, have to advise attorneys who they don't represent but are statutorily obligated to engage in advisory services. All of these things are going to result from an ill-defined final rule that really puts nobody on notice as to how these decisions are going to be made. And I don't think we are asking for much here. We're asking simply for a meaningful opportunity to engage in the process. And what the state seems to be saying is, oh, well, you can remedy all this later, sorry, the government seems to be saying is you can remedy all of this later on, but you can't a 180-day deadline that occurs just by virtue of the threat of the final rule applying for certification under the final rule itself. That means many, many individuals may have defaulted claims, filing within a six-month period needlessly, and that has serious implications. It means that for them, they have been denied the opportunity to engage in thorough investigation with regard to post-conviction claims. Do you know how many inmates in Arizona, for example, would be affected? Well, we have – there are 66 individuals – this is set out in the base declaration – there are 66 individuals presently pending an undirected appeal in state post-conviction, all of whom are at risk, especially given the retroactive application of this rule. We – it's our understanding that the rule being applied retroactively, it means that every day, somebody's deadline could be missed today, tomorrow, and the next day, depending on where they are in the process. And we have to make immediate life-and-death decisions on behalf of our clients that have – that should not have to be made if the Attorney General complied with the APA and afforded us a meaningful opportunity to understand, to engage in the process, so that we can make better decisions going forward, more informed decisions going forward. And I think that's exactly what's at the heart of the APA and what it's designed to affect. If there are no further questions – By engage, you mean we should interpret these to be rules, not orders, and sustain the injunction until the Attorney General has complied with the APA with a notice and comment period required? Well, yes, and in addition, provide definitional content for the catch-all provision. We have not challenged the first two benchmarks. It's the catch-all provision that we really do focus in on and state that we need some clarification on that score. And as you say, Judge Bea, we need some meaningful opportunity to engage in the process. We need to have notice and comment period. We need to be privy to what it is that the state is relying upon. We cannot have ex parte communications. I would note, even in the course of this litigation, we are continually learning more information about what's going on. For the first time in briefing, we have been told that apparently the Arizona application is no longer being processed. That's the first time that we've learned about that. We've also been told in briefing for the first time that the Attorney General will issue some sort of explanation with regard to certification decisions in contrast with the denials of certification by which the Attorney General's position is there needs to be no explanation. And that in and of itself is a problem, is when there's no indication on what the basis is for the denial of a certification, we again are sort of traveling blind while trying to who have their clients as to what they should do. Should they file early and risk defaulting claims for their clients because they are not adequately researched, they are not adequately investigated, because they may be subject to a 180-day deadline, and that deadline, and this is really important, there are serious restrictions on amending a habeas petition as well. So that means when you file, you're stuck with what you got for the most part. And so it should not be the case that dozens, hundreds of death row inmates end up needlessly having to file habeas petitions because they are operating in fear that they will, although they may not, be subject to the 180-day deadline, although if the final rule takes effect, the application itself results in this 180-day deadline being one that we have to embrace out of an abundance of caution. And again— It would be a year otherwise, would it not? Excuse me? It would be one year otherwise, would it not? That's right, that's right, but— So are there some people that would be barred because it took longer than a year? They're under—so the way that the rule works, our understanding is with regard to retroactivity is that some people may actually have deadlines that are just a few days from now because they—the mechanism that was in place at the time that they were—concluded their direct appeals is one that Arizona or California may assert should be certified. And so the six months starts to run as of that date, and it applies retroactively. So you could have somebody in state post-conviction, for example, that didn't file that state post-conviction within 180 days. And so we have to then rush to get that person into federal court, hoping perhaps that we can assert equitable tolling or some other means by which they will be relieved of the really dire effects of this six-month statute of limitations. Thank you, counsel. Your time has expired. Before you leave the room and before we submit, let me ask both sides, is this the kind of case that would be amenable to some sort of mediation? I would have to share with my client before driving to court. I don't think that that would be the case for the government. This is a case in which they probably— Counsel, why don't you take the microphone? I don't see how that could be the case for the government. This is a case in which we have a statutory scheme that directs the attorney general to put regulations into effect to implement the certification procedure. The attorney general has done that, and that's been enjoined. The reason at least I'm raising the question is you heard from the other side about what their concerns are, and it's missed deadlines, obviously. If that could be accommodated some way, maybe— Well, if I may, Your Honor, I know I'm out of time, but I do want to make some factual corrections or dispute some of the factual presentations of opposing counsel, and that goes to one of them with regard to retroactivity. I'll be very brief. I mean, I would refer the court to our briefs, but the retroactivity point that they make is not one that the government agrees about how we expect Chapter 154 to play out. That's a function, of course. The retroactivity problem they're identifying is a problem that would stem from the statute, not from the final rule, but it's also not how the government would expect the statutory scheme to be implemented by federal habeas courts in light of prior precedents, including this Court's precedent in the 1997 Calderon case. There's actually uniform precedent on this point, and so we don't think that that—the only—the second point I would make relatedly, when they talk about deadlines— We're not extending the argument. Okay. We're asking simply whether mediation is a prospect, and obviously from the government's point of view, the answer is clearly no, and I gather we don't have any response from the other side. Well, I think our— Use the microphone, please. Your Honor, I think our client would be open to mediation. It just seems that the government's position is taking on such extreme understanding or interpretation of the rule that it makes it difficult for us to imagine the process being one that would be fruitful. All right. Thank you, counsel. Thank you both, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Silverman, Bea